UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**United States of America**,

        *Plaintiff*,

v.                                                                              Case No. 3:20-cr-024 (1)
                                                                   Judge Thomas M. Rose

**Trevon Leroy**,

        *Defendant*.

---

**ENTRY AND ORDER DENYING DEFENDANT'S MOTIONS FOR COMPASSIONATE RELEASE (DOC. 49, 52).**

---

Pending before the Court is a motion by Defendant Trevon Leroy for a reduction of sentence under the compassionate release provisions of 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018, (Doc. 49, 52). The Government filed a response, (Doc. 55). Leroy requests an order reducing his sentence to time served; or in the alternative, modifying his judgment to allow the remainder of his sentence to be served on home confinement.

**I.  Background**

On August 14, 2020, Defendant Trevon Leroy ("Leroy") was charged by a superseding bill of information with one count of conspiracy to possess with intent to distribute narcotics, to wit: fentanyl; methamphetamine; and cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (R. 26). On August 27, 2020, Leroy entered a plea to the sole count of the superseding

information, with an agreed sentence of a term of imprisonment not to exceed 41 months. (R.30, 33).

Leroy and a co-conspirator, Davion Winston-Stroud, were stopped in a vehicle together and both being found to have various narcotics, including methamphetamine, cocaine, and fentanyl, on their person. (Plea Agreement, R. 33 at 104). Much of the fentanyl and cocaine was packaged in individual gel capsules. Leroy admitted in his statement of facts that he and Stroud were in possession of distribution amounts of fentanyl, cocaine, and methamphetamine, and that he and Stroud conspired together to distribute the narcotics for personal profit. (Plea Agreement, R. 33 at 104).

On November 13, 2020, the probation department prepared a Final Presentence Investigation Report ("PSR"). (R. 35). The PSR calculated Leroy's guidelines as being 46 to 57 months. (Id. at 150). On May 25, 2021, this Court accepted the plea agreement and sentenced Leroy to a term of imprisonment of twenty-four (24) months. (R. 45, 46). Leroy began serving his sentence in the Bureau of Prisons on June 29, 2021. (Doc. 55-1 at p. 2).

Less than three months later, on September 22, 2021, Leroy filed his first motion for compassionate release. (R. 49). Leroy was subsequently assigned counsel, who filed a motion for compassionate release on Leroy's behalf on January 31, 2022. (R. 52).

Leroy is a 26 year-old male currently housed at FCI Ashland. Leroy is currently projected to be released February 6, 2023. Of over 1,000 inmates at FCI Asheland, 1 inmate has COVID, as do 2 staff members. Six inmates have died; no staff members have died. To date, 320 inmates have recovered, as have 164 staff members. www.bop.gov/coronovirus.

Leroy's primary argument in support of his Motion for Compassionate Release is the necessity of providing daily care to his mother who is suffering from uterine cancer. While BOP medical records note that Leroy reported his mother was suffering from cancer, the Court has not received any documentation confirming his mother's diagnosis. Leroy asserts that due to the death of his father, Kevlin Wallace, on July 27, 2021, his mother no longer has adequate care to provide for her daily needs and basic necessities. (Doc. 52-1)

BOP medical records indicate that Leroy has a clinical history of asthma, PTSD, anxiety, and periodic episodes of heart palpitations. Leroy reported being diagnosed with an "enlarged heart" to the BOP in late 2020.

Leroy is vaccinated against COVID-19. He received two doses of the Johnson & Johnson vaccine on June 30, 2021, and July 6, 2021. (Doc. 55-2 at p. 17). Leroy was offered a third dose of vaccine on December 16, 2021, but refused it. (Id. at 17, 24).

Leroy submitted a request for compassionate release to the warden of FCI Ashland on August 4, 2021. (Doc. 52-2). Leroy received a response from the Warden on August 19, 2021. Id.

## II.     Analysis

Leroy asks the Court to grant him a reduction in sentence as permitted by 18 U.S.C. § 3582(c)(1)(A)(i) and to consider what he alleges are extraordinary and compelling reasons for doing so. Section 603(b) of the First Step Act, which was signed into law on December 21, 2018, modified 18 U.S.C. § 3582 to allow a defendant to bring a motion on his or her own behalf either "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the

3

Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub L. No. 115-391, 132 Stat. 5194; *see also United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020) ("If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison," and "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them") (internal quotation marks omitted) (alterations adopted).

A district court has limited authority to modify a sentence. "Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). Section 3582(c)(1)(A) grants such authority in certain limited circumstances. It provides in part:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

Thus, the Court can modify a term of imprisonment if it finds that (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) such a reduction is appropriate

"after considering the factors set forth in § 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020); *United States v. Spencer*, No. 20-3721, 2020 U.S. App. LEXIS 28051, at *4, 2020 WL 5498932 (6th Cir. Sept. 2, 2020).

While judges "have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *United States v. Jones*, No. 20-3701, – F.3d –, 2020 WL 6817488 at *9 (6th Cir. November 20, 2020), the Court references U.S.S.G. § 1B1.13 for guidance. Therein, the Sentencing Commission identifies four circumstances in which "extraordinary and compelling reasons" may exist. *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in § 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). United States Sentencing Commission, Guidelines Manual, § 1B1.13, at cmt. n.1 (Nov. 1, 2018) (Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)). Those four circumstances are: (A) Medical Condition of the Defendant; (B) Age of the Defendant; (C) Family Circumstances; and (D) other extraordinary and compelling reasons. *Id.* Each of the four circumstances has its own parameters. *Id.* Commentary also confirms that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.* at cmt. n.3; *see also United States v. Keefer*, No. 19-4148, 2020 U.S. App. LEXIS 32723, at *6-7, 2020 WL 6112795 (6th Cir. Oct. 16, 2020) ("[i]n Application Note 1 to § 1B1.13, the Commission also listed the 'extraordinary and compelling reasons' that might entitle a defendant to a sentence

5

reduction").

The policy statement also encourages the Court to consider whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; *see also Kincaid*, 802 F. App'x at 188; *Spencer*, 2020 U.S. App. LEXIS 28051, at *4 ("[t]he district court must also find that the defendant is not a danger to the safety of any other person or to the community") (internal quotation marks omitted). Section 3142(g) provides factors to be considered in making that "danger to the safety" determination.

Specifically, 18 U.S.C. § 3142(g) states:

> (g) Factors to be considered. The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of § 1591 [18 USCS § 1591], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release

> described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g); *see also United States v. Jones*, No. 20-3748, 2020 U.S. App. LEXIS 32451, at *4-5 (6th Cir. Oct. 14, 2020).

The factors set forth in § 3553(a) "include, among others, 'the nature and circumstances of the offense'; the defendant's 'history and characteristics'; the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, and afford adequate deterrence; and the need to avoid unwarranted sentencing disparities." *Jones*, 2020 U.S. App. LEXIS 32451, at *6 (quoting 18 U.S.C. § 3553(a)(1), (2), (6)).

Moreover, "compassionate release is discretionary, not mandatory." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that a court "may" reduce the term of imprisonment); *Keefer*, 2020 U.S. App. LEXIS 32723, at *7 ("The statute's plain text makes evident the discretionary nature of a compassionate-release decision," and "the statute lists factors that, when present, *permit* a district court to reduce a sentence") (emphasis in original).

The Bureau of Prisons has taken significant measures to protect inmates. On March 13, 2020, in accordance with its Coronavirus (COVID-19) Action Plan, BOP began to modify its operations to minimize the risk of COVID-19 transmission into and inside its facilities. Since that time, BOP has repeatedly revised the Action Plan to address the crisis. BOP has implemented modified operations to maximize social distancing. Only limited movement is

7

afforded to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited movement of inmates and detainees among its facilities and has implemented detailed screening and quarantine protocols. See www.BOP.gov/coronavirus.

In addition, Bureau of Prisons institutions are receiving vaccine allocations and are working to make the vaccine available to staff and inmates as quickly as possible. More than 325,126 doses have already been administered to BOP staff and inmates. See https://www.bop.gov/coronavirus/ (last visited July 26, 2022).

In an effort to assist inmates who are most vulnerable to the disease and pose the least threat to the community, BOP is also exercising greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed BOP to prioritize transferring inmates to home confinement in appropriate circumstances when those inmates are vulnerable to COVID-19 under the CDC risk factors. A subsequent memorandum from the Attorney General on April 3, 2020, further directed BOP to expand the range of inmates eligible for home confinement, as authorized by the CARES Act. See Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted March 27, 2020.

Since the Attorney General's memo on March 26, 2020, BOP has placed an additional 45,116 inmates on home confinement. See www.BOP.gov/coronavirus/ (last accessed July 26, 2022). Of these, 11 have died of COVID. Id. In this case, BOP has denied Leroy's request for compassionate release.

Leroy alleges that "BOP medical records indicate that Leroy has a clinical history of asthma, PTSD, anxiety, and periodic episodes of heart palpitations. BOP records further note that

Leroy reports being diagnosed with an 'enlarged heart' in late 2020." (Motion for Compassionate Release, Doc. 52 at PageID 258). Anxiety and PTSD are not included on the Center for Disease Control's ("CDC") list of underlying medical conditions which make one most susceptible to severe symptoms if diagnosed with COVID-19. (See https://www.cdc.gov/coronavirus/2019-ncov/need-extra precautions/people-with-medical-conditions.html, last accessed 2/21/2022).

The CDC's list does include "asthma, if it is moderate to severe" as well as "heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and possibly high blood pressure (hypertension)," but does not include heart palpitations or an enlarged heart. (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last accessed 2/21/2022). Leroy has not submitted sufficient evidence to establish that he has been diagnosed with moderate to severe asthma, or a heart condition recognized by the CDC as making one more susceptible to severe COVID symptoms. Leroy's medical records state that he has a history of asthma, but that he has no history of emphysema or COPD, and that he "[d]oes not require inhalers daily at this time." (Doc. 55-2, p. 3, 18).

Even if Leroy could demonstrate that he currently suffers from a medical condition that places him at such an increased risk, his motion would still be denied. The ill health of a parent is not an "extraordinary and compelling reason" for early release. *United States v. Villasenor*, No. 1:14CR420, 2021 WL 1289603, at *3 (N.D. Ohio Apr. 7, 2021), aff'd, No. 21-3477, 2021 WL 5356032 (6th Cir. Nov. 17, 2021). The United States Sentencing Guidelines, § 1B1.13 defines "extraordinary and compelling reasons" relating to family members as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

>. . .
>
>(C) Family Circumstances.—
>
>(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
>(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

Id. The guidelines specifically enumerate incapacitation of the caregiver of defendant's minor children or of the defendant's spouse or registered partner, but omit caregivers for any other family members, such as siblings or parents. Although the policy statements of U.S.S.G. § 1B1.13 are no longer binding, "the Court does find them relevant for determining the existence of extraordinary and compelling reasons for a sentence reduction." *Villasenor*, 2021 WL 1289603, at *3 (citing *United States v. Tomes*, 990 F.3d 500, 503 n. 1 (6th Cir. 2021)). "[T]here is a difference between the incapacitation of a prisoner's spouse or partner as opposed to his parent, even though the desire to care for his parent is just as admirable. As other courts have found, '[m]any, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary.'" Id. (quoting *United States v. Ingram*, 2019 WL 3162305 (S.D. Ohio June 16, 2019)). Accordingly, his motion will be denied.

Finally, a defendant's demonstration of an "extraordinary and compelling reason" alone does not entitle him to compassionate release. This Court must consider the § 3553(a) factors as part of its analysis. See § 3582(c)(1)(A). This includes consideration of "the need to protect the public from further crimes of the defendant," § 3553(a)(2)(C). A defendant's failure to establish that the § 3553(a) factors support relief is an independent basis for denying compassionate

release. *United States v. Ruffin*, 978 F.3d 1000, 1008-09 (6th Cir. 2020); *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

"[T]he nature and circumstances" of Leroy's crimes and the history and characteristics of Leroy establish public safety concerns. 18 U.S.C. § 3553(a)(1). Leroy was convicted of distributing fentanyl, which is currently causing a wave of deaths among those who use it. The Court is not inclined to release back into society early someone who is willing to distribute it. A reduction in sentence would not reflect the need to "protect the public from further crimes of the defendant" under § 3553(a)(2). The need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, and protect the public similarly cuts against relief. See 18 U.S.C. § 3553(a)(2). In view of the § 3553 sentencing factors, compassionate release is improper here. *See* § 3582(c)(1)(A).

### III.  CONCLUSION

Leroy does not meet the requirements necessary to be granted relief under 18 U.S.C. § 3582(c)(1)(A). Thus, the Court **DENIES** Motion for a Reduction of Sentence Under the Compassionate Release Provisions Pursuant to 18 U.S.C. 3582(c)(1)(A) and the First Step Act of 2018. (Doc. 49, 52).

**DONE** and **ORDERED** in Dayton, Ohio on Thursday, July 28, 2022.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE